RICHARD A. HALDERMAN, JR.
3857 Birch St., Suite 480
Newport Beach, CA 92660
Phone: (949) 500-8324

FILED
JUL 1 2 2018
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Proposed Real Estate Broker for Applicant
Karl Anderson, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>VAN OLDEN, PAUL<br><br>Debtor. | CASE NO. 6:18-12527 MW<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY RICHARD A. HALDERMAN, JR. AS REALTOR; DECLARATION OF PROPOSED REALTOR**<br><br>&lt;NO HEARING NECESSARY&gt; |

    Karl Anderson, Chapter 7 Trustee ("Trustee") for the bankruptcy estate of Paul Van Olden ("Debtor"), brings his Application for a Court Order authorizing the employment of Richard A. Halderman, Jr., a licensed independent Realtor and Broker ("Realtor").

    In support thereof, Trustee respectfully represents:

    1.    Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 11, 2018.

    2.    Karl Anderson is the duly appointed, qualified and acting Chapter 7 Trustee.

## THE PROPERTY

3.  The Debtor' Schedule A lists one single family home known as: 6410 Terracina Avenue, Rancho Cucamonga, CA 91737 (County of San Bernardino APN# 0201-072-01) ("property").

## SERVICES TO BE PERFORMED

4.  In order to market the Property most effectively and thereby to liquidate the same for the best and highest price, the Trustee has solicited the assistance of the Realtor. On Trustee's behalf, the Realtor has examined the Property and has agreed to advertise and show the Property to interested parties, to represent the estate as seller in connection with the sale of the Property, and to advise the Trustee with respect to obtaining the highest and best offer available in the present market. A copy of the resume of Realtor is attached hereto as Exhibit A.

5.  Based on the foregoing agreement, the Trustee desired to employ the Realtor as his real estate agent to procure and submit to the Trustee offers to purchase the Property known as: 6410 Terracina Avenue, Rancho Cucamonga, CA 91737 with an estimated value of $675,000. A true and correct copy of the Listing Agreement is attached hereto as Exhibit B.

## COMPENSATION PROCEDURE

6.  In consideration for such services, subject to further application and Court offer, the Realtor will receive, upon consummation of any such sale, a real estate agent's commission in an amount equal to six percent (6%) of the purchase price. In the event that the Property is sold on an overbid to a buyer not procured by the Realtor, Realtor will nonetheless be entitled to receive a realtor's commission not to exceed six percent (6%) of the accepted sales bid. Should the successful overbidding party be represented by their own realtor, the commission of six percent (6%) will be split 50/50 between listing and selling Realtors.

7. The Realtor has been informed and understands that no sale of the Property may be consummated until after a notice to creditors with the opportunity for a hearing as well as a Court Order.

8. As required by local Bankruptcy Rule 2014-1(b)(3)(B), compensation is requested pursuant to 11 USC § 328 of the Bankruptcy Code. Notwithstanding the terms and conditions of employment herein set forth, that the Court may allow compensation different from the compensation provided herein if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of the fixing of such terms and conditions.

## THE REAL ESTATE PROFESSIONAL IS DISINTERESTED

9. The Trustee is satisfied from the Declaration of the Realtor, Richard A. Halderman, Jr., that he has no adverse interest in the estate and is a disinterested person within the meaning of Bankruptcy Code Section 101(14).

10. The Trustee is informed and believes and on that basis alleges the employment of the Realtor on the terms and conditions provided herein is in the best interest of the Debtors bankruptcy estate and its creditors.

WHEREFORE, the Trustee requests that he be authorized to employ the Realtor as the estate's real estate agent on the terms and conditions set forth herein, and that the Trustee be empowered to execute the Listing Agreement and for such other orders the Court deems just and proper.

Dated: July 11, 2018

Respectfully submitted,

_____
Karl Anderson, Chapter 7 Trustee
For the Estate of Paul Van Olden

# DECLARATION OF PROPOSED REALTOR

I, Richard A. Halderman, Jr., declare as follows:

The following is of my personal knowledge, and if called as a witness, I would and could competently testify thereto.

1. I am a real estate agent duly licensed under the laws of the State of California, and have been a licensed sales agent for 44 years. My address is 3857 Birch Street, Ste. 480, Newport Beach, CA 92660. A copy of my resume is attached hereto as Exhibit "A."

2. As a realtor, I have been involved in the listing and sale of numerous real properties throughout California in Orange, Los Angeles, Riverside, San Diego, San Bernardino and Ventura Counties.

3. The Trustee contacted me because of my extensive real estate background and expertise in evaluating and marketing real estate. I have previously served as an agent for the Trustee. The subject property is located in Rancho Cucamonga. I am familiar with the area where the subject property is located.

4. As the agent for the Trustee, I will place this property in the Multi-Regional Multiple Listing Service, post for sale signs and advertise the property in the local newspapers. Open houses, as appropriate, will be conducted. I am a member of the Combined Los Angeles/ Westside, Pacific West, Tri-County, Palm Springs, Lake Arrowhead and the Multi-Regional Multiple Listing services.

5. I do not hold a pre-petition claim against the estate.

6. I have not received a pre-petition retainer.

7. Except as set forth herein, to the best of my knowledge, information and belief, I do not have any adverse interest to the estate. I am not a creditor, an equity security holder, or an

insider. I am not and have not been an investment banker for any outstanding security of the Debtor. I have not been, within three years before the date of the filing of the petition, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of a security Debtor. I am not and have not been within the last two years before the date of the filing of the petition a director, officer or employee of the Debtor or of an investment banker specified herein above and I do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker specified herein above, or for any other reason.

8. Neither I, nor any member of my office, have any connection with the Debtor, creditors, or any other party in interest, their respective attorneys and accountants, the Untied States Trustee or any person employed in the Office of the Untied States Trustee, as set forth in Bankruptcy Rule 2014(a).

9. I believe that I am a disinterested person within the meaning of 11 U.S.C. 101(14) and that I am eligible to serve as a real estate agent for the Trustee in this case.

10. I agree to the Seller's commission pursuant to the terms set forth in my application.

I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of July, 2018 at Costa Mesa, California.

_____
Richard A. Halderman, Jr.

EXHIBIT "A"

RICHARD A. HALDERMAN, JR.
3857 Birch Street, Suite 480
Newport Beach, CA 92660

E-mail:  lidopacmgt@aol.com

RESUME

SUMMARY

Management executive with over 45 years of strong line and staff experience, coupled with a hands-on entrepreneurial background, in the area of real estate marketing, management and development. REO management and disposition, bankruptcy administration and profit and loss responsibility. State Court appointed Receiver for real estate and business entities. Chapter 7 and 11 Bankruptcy Trustee. Real estate disposition specialist for Chapter 7 Panel Trustees – Central District of California. Strong analytical, written and verbal skills. Negotiating, acquisition/ divestiture experience.

PROFESSIONAL EXPERIENCE

LIDO PACIFIC ASSET MANAGEMENT
Costa Mesa, California

President/Owner                                                                1990 – Present

- President and owner of asset management company focusing on non-performing real estate assets for financial corporations and the bankruptcy industry.
- Have supervised up to 15 employees with overall responsibility for over 26,000 ± apartment units, 40 shopping centers, 25 office buildings and other real estate assets, including mobile home parks, vacant land, agricultural properties, industrial and other investment/ commercial assets.
- Court appointed receiver; former Chapter 7 Panel and Chapter 11 Bankruptcy Trustee, custodianship/debtor-in-possession services to financial institutions, owners and Trustees.
- Strong experience in business management, reorganization and disposition both as State Court Receiver and Bankruptcy Trustee. Includes financial analysis, market analysis, business plan development, etc.
- Real Estate fee property management programs:  current responsibility includes residential, retail and office.
- Continued providing REO services to client banks, savings banks and thrift/loans, lawyers, Trustees. Prepared and promulgated timely and periodic status reports.
- Continued tasks detailed below under Lido Pacific Group.

EXHIBIT "A"

## LIDO PACIFIC GROUP
Newport Beach, CA 92660

| | |
|---|---|
| Senior Vice President-Marketing/ Senior Accounting Manager | 1986-1990 |
| Vice President-Marketing | 1983-1986 |
| Asset Account Manager | 1982-1983 |

- Responsible for administration, marketing, management, rehabilitation and disposition of certain "Real Estate Owned" from three of top financial institutions of California and other non-profit institutions. Asset portfolios include single family homes, condos, multi-family, mobile homes, bare land, office buildings, agricultural, industrial/commercial and tracts. Total sales and management responsibility $65,210,000, 758 units.
- Achieved substantial recapture of funds and profits for client institutions as a result of efficient and timely portfolio analysis and management.
- Interfaced with clients and their senior management on a regular basis, providing recommendation as to courses of action. Prepared reports for their financial and project staffs.
- Provided important input on asset management strategies to mitigate loan losses and prevent costly foreclosures.
- Directed work of general contractors, engineers, surveyors and other consultants and vendors in servicing client portfolios.
- Formed, advised and served on various homeowners associations. Organized and implemented California Department of Real Estate filings.
- Actively involved in analysis of real estate purchase packages for company investments. Played key roll in negotiations for purchase, profitability analysis and creation of disposition plans.
- Assisted in implementation of corporate new business development programs.

**EDUCATION**

| | |
|---|---|
| California State University, Los Angeles | One year graduate work in real estate finance |
| University of Southern California | Bachelor of Science in Business<br>Major: Finance<br>Minor: Marketing |

EXHIBIT "A"

PROFESSIONAL DESIGNATIONS

| | |
|---|---|
| Real Estate Broker (since 1973) | State of California |
| Court Appointed Receiver | Superior Courts, Los Angeles, Orange Ventura, Riverside, San Bernardino, San Diego, Alameda, San Luis Obispo, Kern and Marin Counties |
| Former Chapter 7 Panel Bankruptcy Trustee | Central District of California |
| Former Chapter 11 Bankruptcy Trustee | Marina International Properties, Ltd. ($120 Million in Assets) |
| Lieutenant United States Navy (Ret.) | |

**CALIFORNIA ASSOCIATION OF REALTORS®**

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/17)

In re Van Alden, Paul
Chapter 7 Bk. #6:18-12527 MW

Date Prepared: June 25, 2018

1. **EXCLUSIVE RIGHT TO SELL:** Karl Anderson, Chapter 7 Trustee ("Seller") hereby employs and grants Richard Halderman Jr. ("Broker") beginning (date) June 25, 2018 and ending at 11:59 P.M. on (date) May 31, 2019 ("Listing Period") the exclusive and irrevocable right to sell or exchange the real property described as 6410 Terracina Avenue, Rancho Cucamonga, CA 91737, situated in Rancho Cucamonga (City), San Bernardino (County), California, 91737 (Zip Code), Assessor's Parcel No. 0201-072-01 ("Property").
   ☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
   ☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: Six Hundred Seventy Five Thousand and no/100------------------------Dollars ($ 675,000.00 ).
   B. Listing Terms: cash or cash to new loan

3. **COMPENSATION TO BROKER:**
   Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ six percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
   AND _____, as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      OR (2) If within 30 calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
      OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: n/a
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ _____ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: n/a
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: n/a
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

Seller's Initials ( _____ ) ( _____ )

Property Address: __6410 Terracina Avenue, Rancho Cucamonga, CA 91737__ Date: __6/25/18__

4. A. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
   ADDITIONAL ITEMS EXCLUDED: __none__.
   ADDITIONAL ITEMS INCLUDED: __none__.
   Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.
   B. (1) **Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
   ☐ Solar power system  ☐ Alarm system  ☐ Propane tank  ☐ Water Softener
   ☐ Other _____
   (2) **Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
   ☐ Solar power system  ☐ Windows or doors  ☐ Heating/Ventilation/Air conditioning system
   ☐ Other _____
   Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5. **MULTIPLE LISTING SERVICE:**
   A. Broker is a participant/subscriber to __CRMLS__ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.
**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.
**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.
**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials (_____)(_____)    Broker's/Agent's Initials (_____)(_____)

Seller's Initials (_✓_)(_____)

RLA REVISED 6/17 (PAGE 2 OF 5)
RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)

Property Address: 6410 Terracina Avenue, Rancho Cucamonga, Ca. 91737    Date: 6/25/18

B. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

C. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

(1) **Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

(2) **Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(a) **Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(b) **Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

6. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND SELLER'S DUTIES:**
A. Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

B. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

C. Investigations and Reports: Seller agrees, within 5 (or ___) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control  ☐ General Property Inspection  ☐ Homeowners Association Documents
☐ Other _____

D. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

8. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9. **AGENCY RELATIONSHIPS:**
A. **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

D. **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

Seller's Initials ( X ) ( ___ )

RLA REVISED 6/17 (PAGE 3 OF 5)
RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Property Address: 6410 Terracina Avenue, Rancho Cucamonga, CA 91737    Date: 6/25/18

E. **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

10. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

11. **PHOTOGRAPHS AND INTERNET ADVERTISING:**
   A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or [ ] if checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.
   B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) [ ] Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked [ ] does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

13. **SIGN:** Seller does (or if checked [ ] does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** [ ] REO Advisory Listing (C.A.R. Form REOL) [ ] Short Sale Information and Advisory (C.A.R. Form SSIA) [ ] Trust Advisory (C.A.R. Form TA) 1. Property is being sold in AS IS condition with no expressed or implied warranties. 2. Sale subject to Bankruptcy Court approval and overbid.

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within 5 Days After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. ~~**DISPUTE RESOLUTION:**~~
   A. ~~**MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 19B.~~

Seller's Initials ( X ) ( )

RLA REVISED 6/17 (PAGE 4 OF 5)
RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Property Address: 6410 Terracina Avenue, Rancho Cucamonga, CA 91737    Date: 6/25/18

B. ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

C. ADVISORY: If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

20. ENTIRE AGREEMENT: All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. OWNERSHIP, TITLE AND AUTHORITY: Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: Subject property is part of a Chapter 7 Bankruptcy.

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (I) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

Seller _____ Karl Anderson, Chap. 7 Trustee   Date 7/11, 2018
Address 340 S. Farrell Dr., Suite A210  City Palm Springs   State CA   Zip 92262
Telephone 760/778-4889   Fax 760/778-8869   E-mail _____

Seller _____   Date _____
Address _____ City _____ State ___ Zip ___
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) Richard Halderman Jr.   CalBRE Lic. # 00529557
Address 3857 Birch St., Ste. 480   City Newport Beach   State CA   Zip 92660
By _____ Tel. 949/500-8324   E-mail lidopacmgt@aol.com   CalBRE Lic.# _____   Date 6/25/18
By _____ Tel. _____ E-mail _____ CalBRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



RLA REVISED 6/17 (PAGE 5 OF 5)
RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

## PROOF OF SERVICE DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

3857 Birch Street, Suite 480
Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY RICHARD A. HALDERMAN JR., AS REALTOR; DECLARATION OF PROPOSED REALTOR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **June 25, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Karl T. Anderson (TR)   edansie@hotmail.com           kanderson@ecf.epiqsystems.com
Robert P. Goe           kmurphy@goeforlaw.com         rgoe@goeforlaw.com           goeforecf@gmail.com
Angie M. Marth          amarth@logs.com               ssali@logs.com
Andrew Nguyen           ecf.notice@anguyenlawgroup.com
Valerie Smith           claims@recoverycorp.com
U.S. Trustee (RS)       ustpregion16.rs.ecf@usdoj.gov

☐ Service Information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **July 11, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Richard Halderman Jr.          Paul Van Olden               Honorable Mark Wallace
3857 Birch Street, #480        6410 Terracina Avenue        United States Bankruptcy Court
Newport Beach, CA 92660        Rancho Cucamonga, CA 91737   3420 12th Street
                                                            Riverside, CA 92501

U.S. Trustee (RS)              Honorable Mark Wallace
3801 University Ave., Ste. 720 United States Bankruptcy Court
Riverside, CA 92501-3255       411 West Fourth Street
                               Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal deliver, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

July 11, 2018          Richard Halderman Jr.          /s/ Richard Halderman
Date                   Type Name                      Signature

---

This form is mandatory. It has been approved for the use by the United States bankruptcy court for the Central District of California.

June 2012                                                           F 9013-3.1.PROOF.SERVICE